Opinion issued April 7, 2005








     







In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00628-CV




TAMMY LATHAM, Appellant

V.

DEPARTMENT OF FAMILY AND PROTECTIVE SERVICES, Appellee




On Appeal from the 247th District Court
Harris County, Texas
Trial Court Cause No. 2001-40699




O P I N I O N

          Tammy Latham appeals the trial court’s order terminating her parental rights
to her minor children, K.L., J.L., and H.T. Latham contends (1) she is entitled to a
reversal due to the trial court’s delay in appointing her appellate counsel; and (2) the
evidence is legally and factually insufficient to support the trial court’s termination
of her parental rights to her three minor children. We affirm.
Facts
          Latham married Jeffrey Latham in December 1993. Latham testified that she
was aware of his criminal history when they married, but that she did not know that
one of his prior convictions included injury to a child, two years earlier, in August
1991. Jeffrey and Latham had their first child, K.L., in July 1995. Latham gave
birth to their second child, J.L., in December 1996. 
          Although Latham denies using illegal drugs before the birth of her children,
she testified that both she and Jeffrey began using cocaine and marihuana after the
children were born. Latham testified that they did not abuse drugs in the presence
of their children. Latham admits that she has a drug problem and that she knowingly
engaged in a lifestyle that could injure her children. 
          Latham was convicted for possession of cocaine and for theft after the birth
of her two children. As of the time of trial, she was in jail for a third charge, the
unauthorized use of a motor vehicle. Thus, she has been incarcerated three times
since her first child was born in 1995. Latham admits that while incarcerated she is
unable to protect her children and provide for their physical and emotional needs. 
Further, she admits that engaging in criminal activity places her children in danger. 
          The Texas Department of Family and Protective Services (“DFPS” or “the
agency”) became involved with Latham’s children in November 2001, after
receiving a referral that K.L. had been left unattended at school. The school police
picked up K.L. at 5:30 p.m., over three hours after school ended for the day. Latham
explained that she was out of town and the person responsible for picking up K.L.
from school had the days confused, but she admitted she failed to call and verify that
the person actually picked up K.L. During the time the agency was involved with
Latham’s children, a court ordered that Latham and her husband submit to drug
testing. Both tested positive for cocaine in February 2002. Her first arrest for
cocaine possession happened as she was working with the DFPS on a family service
plan to reunite her with her children. Latham admits that she and her husband used
crack cocaine on a daily basis in the first half of 2002.
          In April 2002, the Lathams agreed in a temporary order that neither of them
was fit to be the primary caretaker of the children. The order named the DFPS as the
temporary sole managing conservator of the children. Latham agreed to pay court-ordered child support, in the amount of $187.50 per month, beginning August 2002. 
In May 2003, the Attorney General moved to enforce the child support order because
Latham was in arrears in the amount of $1,800. During the time the DFPS cared for
the children, Latham made one payment. She explained she was unable to pay the
balance, due to her numerous incarcerations. 
          The agency’s Children’s Crisis Center evaluated Latham in August. She
admitted to the agency’s evaluator that she had a problem and that her husband used
and sold illegal drugs. Latham also revealed to the evaluator that her father had
molested her as a child. Despite her own sexual abuse by her father, she and her
children currently lived in her father’s home. Latham also admitted that her father
supplied her with cocaine. She testified that she did not leave her children alone
with her father, and assured she or her mother was also in the home. Latham agreed
with the agency that it would have been better for her children if they did not reside
with her father, but she stated that they did not have anywhere else to go. 
          Latham signed a family service plan with the agency in September 2002. In
her plan, she agreed to complete the DFPS requirements in order to be reunited with
her two children. The agency’s plan required Latham to (1) obtain a psychological
evaluation and follow its recommendations; (2) complete a drug and alcohol
assessment and follow the recommendations of the service provider; (3) locate and
maintain proper housing; (4) obtain gainful employment; and (5) attend parenting
classes. Latham lived with her mother until she was once again incarcerated, and
started attending parenting classes, which she did not complete.
          In late 2002, Latham began a relationship with Steven Toney and became
pregnant with his child. During this period, she returned to reside at her father’s
home. Toney went to Latham’s father’s home to find her, and her father shot and
killed Toney. During this pregnancy, Latham used illegal drugs for at least a month. 
Latham gave birth to her third child, H.T., on June 30, 2003, while in jail on the
cocaine possession conviction. Although K.L. and J.L. remained in the agency’s
custody at the time of H.T.’s birth, Latham did not alert the agency of the birth of
H.T. Instead, Latham’s mother came to the jail and picked up H.T. 
          In late August 2003, Latham completed her jail time, but she did not contact
the agency about resuming her service plan. Two months later, in October 2003,
police arrested Latham for the unauthorized use of a motor vehicle, a state jail
felony. At the time of her parental termination trial, the state jail felony charge had
not been tried and she remained incarcerated. In November 2003, Latham and the
agency amended the temporary order to include H.T. 
          The trial court appointed counsel for Latham on January 9, 2003. After a
bench trial, the trial court ordered Latham’s parental rights to her three minor
children terminated. On February 9, 2004, Latham filed a pro se notice of appeal
and a request for appointment of appellate counsel. Latham’s pro se filing does not
include a certificate of service, but a letter Latham filed with the trial court indicates
that she mailed a copy of her notice of appeal to her trial counsel. The trial court
considered the appointment of appellate counsel on March 26, 2004, and signed an
order appointing appellate counsel on July 9, 2004. 
          Latham contends that we should reverse because (1) the trial court unduly
delayed in appointing appellate counsel; and (2) legally and factually insufficient
evidence supports the judgment. 
Standard of Review
          In termination of parental rights cases, “due process requires that the State
support its allegations by at least clear and convincing evidence” to reduce the risk
of erroneous termination. Santosky v. Kramer, 455 U.S. 745, 747-48, 102 S. Ct.
1388, 1391-92 (1982); In re B.L.D., 113 S.W.3d 340, 353-54 (Tex. 2003). “‘Clear
and convincing evidence’” means the measure or degree of proof that will produce
in the mind of the trier of fact a firm belief or conviction as to the truth of the
allegations sought to be established.” In re J.F.C., 96 S.W.3d 256, 264 (Tex. 2002)
(quoting Tex. Fam. Code Ann. § 101.007 (Vernon 2002)); see also In re C.H., 89
S.W.3d 17, 25 (Tex. 2002) (discussing the Texas Supreme Court’s and the
Legislature’s use of the same definition of “clear and convincing evidence”);
Robinson v. Tex. Dep’t of Protective & Regulatory Servs., 89 S.W.3d 679, 688 (Tex. 
App.—Houston [1st Dist.] 2002, no pet.).
          The standard for appellate review of legal sufficiency in termination-of-parental-rights cases is whether the evidence is such that a fact finder reasonably
could form a firm belief or conviction about the truth of the matter on which the
State bears the burden of proof. In re J.F.C, 96 S.W.3d at 266. In reviewing a
challenge to the factual sufficiency of the evidence, we consider the evidence that
the fact finder reasonably could have found to be clear and convincing. Id. (citing
In re C.H., 89 S.W.3d at 25). An appellate court should not reverse if, considering
all of the evidence in the record, the fact finder reasonably could have formed a firm
conviction or belief that the parent committed one of the alleged grounds of
termination and that the termination is in the best interest of the child. In re C.H.,
89 S.W.3d at 27. 
          The natural right that exists between parents and their children is one of
constitutional dimension. See In re J.F.C., 96 S.W.3d at 273; see also In re C.H., 89
S.W.3d at 26. A parent’s right to “the companionship, care, custody and
management of his or her children” is a constitutional interest “far more precious
than any property right.” Santosky, 455 U.S. at 758-59, 102 S. Ct. at 1397 (quoting
Stanley v. Illinois, 405 U.S. 645, 651, 92 S. Ct. 1208, 1212 (1972)). In a case
terminating parental rights, therefore, we strictly scrutinize the proceedings and
strictly construe the law in favor of the parent. Holick v. Smith, 685 S.W.2d 18, 20
(Tex. 1985). Failure to Promptly Appoint Appellate Counsel
          Latham contends that the trial court’s delay in granting her request for
appellate counsel rendered moot her ability to have an effective appeal, and thus we
should reverse the judgment of the trial court. Latham maintains that because she
is indigent, her right to appointed counsel continued after the trial court signed her
termination order. She contends that her appointed trial counsel “appeared” to
withdraw, and that the trial court failed to appoint her appellate counsel until July 9,
2004, after the deadline for requesting findings of fact and conclusions of law from
the trial court. 
          The DFPS responds that Latham has appellate counsel, and she cannot
demonstrate prejudice from trial counsel’s failure to request findings of fact and
conclusions of law. In its brief, the agency also analyzes Latham’s issue to be an
ineffective assistance of counsel claim.


 
           In parental termination cases, we look to the Court of Criminal Appeals for
guidance in determining when a trial court appoints appellate counsel for an indigent
person. In Smith v. State, 17 S.W.3d 660, 662-63 (Tex. Crim. App. 2000), the Court
of Criminal Appeals held that a presumption exists that a party represented by
counsel at trial remains represented by counsel during the time for filing a motion
for new trial. See also Oldham v. State, 977 S.W.2d 354, 362-63 (Tex. Crim. App.
1998) (en banc) (op. on reh’g).
          Here, Latham’s trial counsel never moved to withdraw from the case, and
Latham copied trial counsel on her pro se notice of appeal. After his appointment,
appellate counsel never contended in the trial court that Latham lacked
representation post-trial. Thus, no evidence exists that trial counsel ended his
representation at the conclusion of the trial, or that he had abandoned Latham. See
Smith, 17 S.W.3d at 662 (citing Oldham, 977 S.W.2d at 362). We also note that
Latham filed a pro se notice of appeal, which is an indication that she was aware of
some of her appellate rights, “and we presume she was adequately counseled unless
the record affirmatively displays otherwise.” Id. (citing Oldham, 977 S.W.2d at
363). If an indigent person entitled to representation is no longer represented by trial
counsel, then upon request, the trial court should conduct an inquiry and promptly
appoint appellate counsel. Absent any indication in the record that Latham was
without counsel, however, we hold that the trial court did not err in delaying the
appointment of appellate counsel in this case. 
Legal and Factual Sufficiency of the Evidence
          Latham further contends that, as a result of the delay in appellate
representation, she was unable to procure the findings of fact and conclusions of law,
which hinders her appeal. Her only contention as to the merits of this case, however,
is that the evidence is legally and factually insufficient to support the termination of
her parental rights to her children on at least “some of the grounds.” She notes that
the State alleges twenty-two grounds for termination, and that the trial judge could
have granted the request for termination on a ground that lacked legally or factually
sufficient evidence. With findings of fact and conclusions of law, a hypothetical
appeal could attack that ground, and we could not affirm on others supported by
evidence, but not “found” by the trial court. 
          Yet, in reality, the judgment terminating Latham’s parental rights expressly
specifies that she committed the following four grounds for termination: 
(1) knowingly placed or knowingly allowed the children to remain in
conditions or surroundings which endanger the physical or emotional
well-being of the children;
 
(2) engaged in conduct or knowingly placed the children with persons
who engaged in conduct which endangers the physical or emotional
well-being of the children;
 
(3) failed to support the children in accordance with the parent’s ability
during a period of one year ending within the six months of the date of
the filing of the petition; and 
 
(4) constructively abandoned the children who have been in the
permanent or temporary managing conservatorship of the Department
of Protective and Regulatory Services or an authorized agency for not
less than six months, and: (i) the Department or authorized agency has
made reasonable efforts to return the children to the parent; (ii) the
parent has not regularly visited or maintained significant contact with
the children; and (iii) the parent has demonstrated an inability to
provide the children with a safe environment. 

See Tex. Fam. Code Ann. § 161.001(1)(D)-(F), (N) (Vernon 2002). We thus
conclude, as the trial court’s order reflects, that it is these four grounds that the trial
court found to be the basis for parental termination.


 Only one of these findings is
necessary for a judgment of termination. See Robinson, 89 S.W.3d at 687. A court
may base a termination of parental rights upon a finding that a parent engaged in
conduct described in one of the alleged grounds, plus a finding that termination is
in the best interest of the children. See Tex. Fam. Code Ann. § 161.001(1)-(2); see
also In re L.M., 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.] 2003, no
pet.). We thus determine whether the evidence is legally and factually sufficient to
support the trial court’s finding that (1) Latham knowingly placed or knowingly
allowed the children to remain in conditions or surroundings which endangered their
physical or emotional well-being; and (2) that termination is in the children’s best
interests.
          “Endanger” means to expose a child to loss or injury or to jeopardize a child’s
emotional or physical health. See Robinson, 89 S.W.3d at 686 (citing Tex. Dep’t of
Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987) and Doyle v. Tex. Dep’t of
Protective & Regulatory Servs., 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet.
denied)). While “endanger” means more than a “threat of metaphysical injury or the
ill effects of a dysfunctional family,” it does not require that the conduct be actually
directed at a child or that a child suffer an actual injury. Id. (citing Boyd, 727
S.W.2d at 533); see also Doyle, 16 S.W.3d at 394. “Under section 161.001(1)(E),
the danger to a child must arise solely by the parent’s conduct established by the
parent’s actions or by the parent’s failure to act.” Robinson, 89 S.W.3d at 686 (citing
Doyle, 16 S.W.3d at 395). A parent’s imprisonment will not, standing alone,
constitute endangerment. Id. (citing Boyd, 727 S.W.2d at 533). If the evidence,
including imprisonment, however, shows a course of conduct that endangers the
physical or emotional well-being of the child, then such facts support a finding under
section 161.001(1)(E). Id. (citing Boyd, 727 S.W.2d at 533-34). 
          Latham has a history of illegal drug use, criminal activity, and imprisonment. 
Latham admitted that both she and her husband used drugs in their home, and that
she realized these activities endangered her children. These activities continued after
the birth of her children, and after Latham agreed not to commit such acts during her
agreement to follow the agency’s plan for reunification with her children. Here,
Latham knew her parental rights were in jeopardy, yet she failed to comply with the
agency’s family reunification plan. She also continued to use illegal drugs, even
during her pregnancy with H.T. We hold that legally and factually sufficient
evidence exists to support the trial court’s finding of endangerment. See id. at 687
n. 9 (appellant’s use of drugs during pregnancy may be considered endangering a
child). 
          In determining the best interest of a child, courts examine a number of factors,
including: (1) the desires of the child; (2) the emotional and physical needs of the
child now and in the future; (3) the emotional and physical danger to the child now
and in the future; (4) the parental abilities of the individual seeking custody; (5) the
programs available to assist the individual; (6) the plans for the child by the parent
and the individual seeking custody; (6) the stability of the home; (7) the parent’s acts
or omissions that indicate that the existing parent-child relationship is not a proper
one; and (8) any excuse for parent’s acts or omissions. Holley v. Adams, 544 S.W.2d
367, 371-72 (Tex. 1976). The “Holley” factors are not exhaustive; some listed may
not apply, while others not included on the list may also be appropriate. In re C.H.,
89 S.W.3d at 27. Evidence that proves one or more statutory grounds for termination
may also constitute evidence illustrating that termination is in the child’s best
interest. Id. at 28. Using these factors, we examine whether the evidence is legally
and factually sufficient to support the trial court’s finding that termination is in the
children’s best interests, as discussed below. 
          The agency’s caseworker testified that K.L. has many special needs, including
mental health, psychological, and medical needs. K.L. has a thyroid problem, mood
disorder, bipolar disorder, borderline intellectual functioning, post-traumatic stress
disorder, and attention deficit disorder. As a result of these needs, K.L. receives
psychotherapy, individual therapy, speech therapy, and medication. The caseworker
further testified that K.L.’s current placement in a residential treatment center is
meeting her physical and emotional needs, and that it is in K.L.’s best interest to
remain in the treatment center. J.L. and H.T. do not have any special needs, but the
caseworker testified that their needs are being met in their placement home and that
they are doing exceptionally well. 
          Latham testified that both she and her husband used cocaine on a weekly basis
during the time that they, along with K.L. and J.L., lived at her mother’s home. 
Latham ingested cocaine during her pregnancy with H.T., and the child tested
positive for cocaine at birth. Latham continued to use drugs after giving birth to
H.T., knowing that she needed to remain drug-free to be reunited with her children. 
The trial court could have considered the danger to the children from an inconstant
relationship with a mother, who because of her drug use and incarceration, disrupts
any permanency or stability for the children. The trial court reasonably could have
inferred that Latham’s risk of relapse is high, given that she continued to ingest
drugs while her children lived in protective custody, and while she sought to be
reunited with them.
          Latham’s drug abuse and failure to comply with the agency’s reunification
plan is also evidence of an improper parent-child relationship. Her drug abuse
during her pregnancy endangered H.T.’s well-being. Latham testified that she knew
that her drug use endangered her children; yet, she continued to use drugs. To
counter this evidence, Latham testified that she needed to be with her children and
she loved them very much. She further testified that, although her history does not
support her contention that she could be a good mother, she would like another
chance to be with her children. We defer to the trial court’s role in assessing the
weight and credibility of this evidence, cast against Latham’s previous history of
abuse and neglect. See In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002).


 
          The record contains little evidence of Latham fulfilling any of her parental
responsibilities. In one instance, K.L. was left alone for nearly three hours after
school. Her parental responsibilities have been performed by others, namely the
agency and foster parents. Latham has not demonstrated that she possesses the
ability to maintain a stable home, maintain employment, and to remain drug-free, nor
the ability to live without incarceration. While in the free world, she visited her
children five times, and only once in the eighteen months before her termination
trial. The caseworker testified that Latham failed to contact her to schedule visits
with her children. The record does not contain any evidence of Lathams’ plans for
her children. 
          As of the date of trial, Latham did not have a home and was awaiting trial for
her state jail felony charge. She admitted that despite being molested by her father
as a child and as a teenager, she continued to live with him during the eighteen
months preceeding her incarceration and the parental termination trial. Latham also
admitted using drugs in both her mother’s home and her father’s home. Latham has
failed to complete any parenting or substance abuse classes. Even after K.L. and J.L.
were taken into protective custody, Latham refused to complete the courses the
agency recommended. 
          In contrast, the caseworker for the agency testified that J.L. and H.T. are
adoptable, and that adoptive parents exist. The caseworker testified that J.L. and H.T.
reside in a foster home, and due to K.L.’s special needs, she is in a residential
treatment center. She further testified that, with continued treatment, K.L. could be
adopted. The caseworker also testified that J.L. and H.T. reside together in a foster
home and are doing “exceptionally well.” Their foster parents are very interested in
adopting the two children. 
          Evaluating these facts under Holley, we hold that legally and factually
sufficient evidence supports the trial court’s finding that termination of Latham’s
parental rights is in the best interest of these three children. See Holley, 544 S.W.2d
at 371-72. 

                              Conclusion
          We conclude that (1) the trial court did not err in its delay in appointing
appellate counsel because Latham fails to demonstrate that her trial counsel
withdrew or that she was otherwise without representation immediately after trial;
and (2) the delay in appointment of appellate counsel did not hinder the presentation
of this appeal because the evidence is legally and factually sufficient to support the
termination of her parental rights on grounds set forth in the trial court’s order of
termination. We therefore affirm the judgment of the trial court.



                                                             Jane Bland
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Higley and Bland.